UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANIE BROWN,<br><br>                              Plaintiff,<br>   vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>                              Defendant. | CASE NO. 06 CV 1721 JM (AJB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Janie Brown brought this action for judicial review of the Commissioner of Social Security's ("Commissioner's") final administrative decision denying Plaintiff disability insurance benefits under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons set forth below, the court hereby affirms the Commissioner's decision, denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

**I.    BACKGROUND**

Plaintiff is a 55-year-old woman who completed one year of college and previously worked as an in-home caregiver. (A.R. at 14.) Plaintiff initially applied for disability insurance benefits on September 8, 2004. (Id.) The application was denied both initially and on reconsideration. (See id. at 24-33.) On October 5, 2005, Plaintiff testified at an administrative hearing at the Office of Disability Adjudication and Review. On March 30, 2006, the Administrative Law Judge ("ALJ")

1  issued a written decision denying her application. (Id. at 10-20.) The Appeals Council adopted these
2  findings on June 29, 2006. (Id. at 4-8.)

3        In her application, Plaintiff alleged that she was disabled due to both back pain and psychotic
4  depression. (Id. at 14.) Plaintiff has not worked since the alleged disability onset date of February
5  18, 2002. (Id.) Her date of last insurance ("DLI") was December 31, 2003.

6        On the alleged onset date, Plaintiff injured her lumbar spine when she lifted a patient into a
7  wheelchair. (See id. at 109.) Thereafter, she saw numerous medical professionals for both her
8  physical and mental difficulties. Orthopedic surgeon Dr. Eric Korsh, her primary treating physician,
9  treated Plaintiff for her back injury beginning on April 1, 2002. (Id. at 207.) Dr. Korsh diagnosed
10 Plaintiff with lumbar strain and referred her for psychological counseling due to symptoms of
11 depression. (Id.) The doctors who treated and evaluated Plaintiff regarding her alleged psychological
12 disability include: (1) Dr. Thomas Harpley, a clinical psychologist who performed a consultative
13 evaluation on October 10, 2002 (id. at 183-94) and issued progress reports as a secondary treating
14 physician through December 12, 2003 (id. at 174-82); (2) Dr. Bruce Dow, a psychiatrist who began
15 treating Plaintiff on January 7, 2003 (id. at 132-39); and (3) Dr. Mounir Soliman, a consultative
16 examining psychiatrist who evaluated Plaintiff on December 13, 2004 (id. at 146-50).

17 **II.  DISCUSSION**

18       Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of
19 treating psychiatrist Dr. Dow regarding the disability onset date. (Memo. of Pts. and Auths. in
20 Support of Brown's Mot. for Summary Judgment ("Brown MSJ") at 5.) While Plaintiff alleged both
21 physical and mental disability, she challenges the ruling only in regard to the latter. Defendant argues
22 that the ALJ arrived at the correct conclusion and appropriately disregarded Dr. Dow's 2005 opinion
23 that Plaintiff was disabled.

24      **A.  Legal Standards**

25       This court reviews the Commissioner's final decision to determine whether the decision is
26 supported by substantial evidence and free from legal error. Magallanes v. Bowen, 881 F.2d 747, 750
27 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla, but may be less than a
28 preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). Any relevant evidence that "a

1  reasonable mind might accept as adequate to support a conclusion" may constitute substantial
2  evidence.  Magallanes, 881 F.2d at 750.  If more than one reasonable interpretation of the evidence
3  before the ALJ exists, the court must affirm the ALJ's interpretation of the evidence.  Sandgathe v.
4  Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).
5  Even where substantial evidence supports the final decision, however, the court will overturn the
6  decision if the ALJ applied the wrong legal standard.  Benetiz v. Califano, 573 F.2d 653, 655 (9th Cir.
7  1978); Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968).

8  Plaintiff bears the burden of establishing that she is disabled.  Meanel v. Apfel, 172 F.3d 1111,
9  1113 (9th Cir. 1999).  By definition, a disability is an "inability to engage in any substantial gainful
10  activity by reason of any medically determinable physical or mental impairment which can be
11  expected to result in death or which has lasted or can be expected to last for a continuous period of
12  not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The date of onset of the disability also bears
13  on a claimant's ability to receive disability insurance benefits.  Morgan v. Sullivan, 945 F.2d 1079,
14  1081 (9th Cir. 1991) (citing Swanson v. Sec'y of Health and Human Servs., 763 F.2d 1061, 1065 (9th
15  Cir. 1985)); Soc. Sec. R. ("SSR") 83-20, Policy Statement).  Plaintiff must prove that she became
16  disabled before her DLI.  See Morgan, 945 F.2d at 1080; 42 U.S.C. § 423(c).

17  The ALJ conducts a five-step inquiry to determine whether a social security claimant is
18  disabled.  Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); 20 C.F.R. § 404.1520.  At step one, if a
19  claimant is currently working, the claimant is not disabled.  Barnhart, 540 U.S. at 24.  Step two
20  requires a determination of whether the claimant's impairment is "severe."  Id.  If the claimant's
21  impairment is not severe, the claimant is not disabled.  Id.  At step three, the ALJ must determine if
22  the claimant's impairment is listed in the Listing of Impairments of Appendix 1, Subpart P,
23  Regulations No. 4 ("Appendix 1"), or whether the claimant's impairment is equal to an impairment
24  included in Appendix 1.  See id. at 24-25.  If the impairment is included in Appendix 1 or is equal to
25  a listed impairment, the claimant is presumptively disabled.  See id.  At step four, if the claimant has
26  a severe impairment that is not enumerated in Appendix 1, the ALJ determines whether the claimant
27  can perform his or her past work.  Id. at 25.  If the claimant can perform past work, the claimant is not
28  disabled.  Id.  At step five, if the claimant is unable to perform past work, the burden shifts to the ALJ

to determine whether the claimant can perform other work. Id. If the claimant is able to perform other work, the claimant is not disabled. Id.

Finally, where an examining physician's opinion is contradicted by another physician, the examining physician's opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

**B.     Analysis**

Plaintiff claims that the court should reverse and remand the Commissioner's final ruling because the ALJ should have given controlling weight to Dr. Dow's opinion regarding the date of disability onset. Dr. Dow stated that Plaintiff became disabled in January 2003 due to "bipolar disorder, with depression and psychosis." (A.R. at 16.) In his January 20, 2004 report, he found her condition markedly impaired. In his August 18, 2005 report, he labeled her pre-DLI condition severe. (See Brown MSJ at 9.) The ALJ disagreed and held that the evidence – "including the reports of record from Dr. Dow" – was inconsistent with this statement and did not establish that Plaintiff was disabled for a period of at least 12 months prior to the DLI. (A.R. at 16.) The ALJ then resolved this case at the fifth stage of the inquiry, determining that Plaintiff was unable to perform her past work but able to work as an assembler and office helper. (See id. at 18-19.) Plaintiff levels two primary attacks against the ALJ's rejection of Dr. Dow's opinion.[1]

**1.     Non-Compliance with Prescribed Treatment and Medication**

Plaintiff disputes the ruling that her non-compliance with prescribed treatment and medication supports the conclusion that she was not disabled. (Brown MSJ at 6.) She claims that the ALJ improperly relied on her non-compliance in rejecting Dr. Dow's 2005 opinion.

Plaintiff argues that her non-compliance is acceptable under 20 C.F.R. § 404.1530(c). (Brown MSJ at 6-7.) She first cites Dr. Dow's January 20, 2004 report, which discussed her history through January 2004 with several medications. Dr. Dow reported that Plaintiff discontinued Zyprexa because

---

[1]Defendant argues that Plaintiff mis-characterizes the ALJ's decision as assigning an onset date. This is a valid argument. Plaintiff claims that the ALJ should not have rejected Dr. Dow's opinion "regarding the disability onset date." (Brown MSJ at 5.) The thrust of Plaintiff's motion, however, is that the ALJ should not have rejected Dr. Dow's opinion that Plaintiff was disabled during the relevant time period. Thus, the court does not deny Plaintiff's motion due to this inaccuracy.

it caused headaches, Risperdal because it caused constipation, and Prozac because it "no longer controlled her voices." (Id. at 8.) Plaintiff also cites Dr. Dow's March 10, 2005 report, which attributed her non-compliance in December 2004 and January 2005 to a decrease in Geodon to a non-therapeutic level. (Id. at 7-8.) Plaintiff claims that she errantly decreased the Geodon because the drug "made her manic . . . and increasingly paranoid."[2] (Id. at 8.) Thus, Plaintiff allegedly failed to take her prescribed medication due to (1) undesirable side effects and (2) her mental "condition." (Id.)

Plaintiff's argument regarding non-compliance fails to persuade.[3] "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). A claimant's non-compliance with prescribed treatment can prevent a finding of disability unless the claimant has an "acceptable reason[]" for the failure. 20 C.F.R §§ 404.1530(b), (c). This regulation requires the ALJ to consider the claimant's "physical, mental, educational, and linguistic limitations," and provides examples of acceptable reasons for non-compliance. 20 C.F.R § 404.1530(c).

In regard to the relevant time period, the ALJ appropriately cited the non-compliance to explain why Plaintiff's periodic reported symptoms of psychosis did not lead to a disability finding. (See A.R. at 15.) The ALJ listed numerous instances of non-compliance, including medication non-compliance in January 2003, failure to attend appointments and take medications as prescribed in March 2003, failure to take medications in April 2003, and failure to attend appointments from July through December 2003. (Id. at 15-26.) The ALJ appeared to conclude that Plaintiff's mental condition could be controlled effectively with treatment and medication. (See, e.g., id. at 16 ("On April 15, 2003, the claimant was again noncompliant with prescribed treatment, and stated that her hallucinations returned when she stopped taking medications; however, her hallucinations disappeared when she again started her medications.").) To that end, the non-compliance helps create a full picture of the chronology of events leading to Plaintiff's claim.

Plaintiff argues that her non-compliance is excused under 20 C.F.R § 404.1530(c), but her

---

[2] Plaintiff's husband became responsible for monitoring her medication. (Brown MSJ at 8.)

[3] As a preliminary matter, the court notes that her non-compliance in December 2004 and January 2005, mentioned in Dr. Dow's March 10, 2005 report, bears no relevance to whether Plaintiff became disabled pre-DLI.

offered excuses do not adequately address the instances of non-compliance cited by the ALJ. The court notes that it is unclear whether Plaintiff discontinued Zyprexa on Dr. Dow's advice or on her own, due to headaches (see A.R. at 181); to the extent she did so on Dr. Dow's advice, this is excusable. Regardless, Plaintiff does not sufficiently explain her failure to attend prescribed treatment sessions or her one-week "experiment" during which she stopped all medications. (See id. at 177 (Dr. Harpley's report regarding April 15, 2003 treatment).) The instances of non-compliance were one factor among many contributing to the ALJ's finding. Thus, the court finds that the ALJ's conclusion regarding non-compliance is supported in the factual record and applies the correct legal standards. See Warre, 439 F.3d 1006.

### 2. Description of Plaintiff's Pre-DLI Status by Treating Mental Health Practitioners

Plaintiff also claims the ALJ erroneously rejected Dr. Dow's opinion on the ground that, prior to the DLI, her treating mental health practitioners found she had "only moderate restrictions as to functioning, and was not precluded from understanding, remembering, or carrying out simple repetitive tasks." (Brown MSJ at 9.) Plaintiff emphasizes that Dr. Dow concluded that she was severely impaired pre-DLI. (See id.) She also states that the vocational expert found this level of impairment constituted disability and would preclude all types of employment. (See id.)

"Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. In general, the ALJ should accord the greatest weight to the opinion of a treating physician, a lesser degree of weight to the opinion of an examining physician, and the least weight to the opinion of a nonexamining physician. See id. This framework mandates that the ALJ not casually reject a treating doctor's opinion. See id. (ALJ cannot reject treating doctor's opinion without either "clear and convincing reasons," where opinion is uncontradicted by another doctor, or "specific and legitimate reasons supported by substantial evidence in the record," where opinion is contradicted) (internal citations and quotations omitted).

Applying the strictures of this framework here, Plaintiff's argument fails. The ALJ found that

the 2005 opinion of Dr. Dow, a treating physician, was contradicted not only by the opinions of other physicians but also by Dr. Dow's own earlier notes. Specifically, the ALJ cited (1) the 2002 and 2003 reports of Dr. Harpley, a secondary treating physician, which show intermittent improvement and setbacks believed to be caused by non-compliance with prescribed treatments (A.R. at 15-16), and (2) the December 2004 opinion of Dr. Soliman, an examining physician, who agreed that "the record was consistent with a residual functional capacity on a psychiatric basis for the performance of simple repetitive tasks" (id. at 17). Moreover, Dr. Dow did not opine that Plaintiff was disabled pre-DLI until August 18, 2005 – two years after the time period in question. This opinion contradicted some of the treatment notes Dr. Dow recorded contemporaneously with his treatment of Plaintiff in 2003. (See, e.g., A.R. at 16 ("Dr. Dow's opinions of April through August 2005 are not supported by ongoing objective medical evidence of record regarding the time period prior to the claimant's date last insured.")) Dr. Dow reported throughout 2003 that Plaintiff's condition was improving and that Plaintiff was "'emotionally pretty good'" and "'feeling much better.'" (See id.) Dr. Dow also reported in January 2004 that "[Plaintiff]'s depression was largely resolved." (Id. at 17 (also noting that Dr. Dow "declared [Plaintiff] permanent and stationary").) The ALJ thus considered many of Dr. Dow's observations during the relevant time period more credible and accorded them greater weight than Dr. Dow's contradictory opinions years later.

In sum, the court concludes that the ALJ applied the appropriate legal standard and rejected Dr. Dow's opinion based on specific and legitimate reasons with substantial evidentiary support. See Lester, 81 F.3d at 830.

### 3. Need for Medical Advisor to Establish Date of Onset

Lastly, Plaintiff argues that the ALJ should have enlisted a medical advisor to assist in establishing a disability onset date. (Brown MSJ at 10.) Plaintiff cites Morgan, in which the court held that, where the evidence regarding the onset of the claimant's mental impairment was ambiguous and required inference, the ALJ should have requested a medical expert's help. 945 F.2d at 1080 (citing Soc. Sec. R. ("SSR") 83-20). Defendant contends that Plaintiff's reliance on this case is ill-founded because Morgan "requires a finding of disability as a condition precedent to mandating medical expert testimony to assist the ALJ in determining the precise onset date of disability." (Astrue

1  MSJ at 5.) Here, Defendant points out, the condition precedent was not met because the ALJ never
2  found Plaintiff disabled. (Id.)

3  The case law applying the rule in Morgan and SSR 83-20 does not clarify whether a finding
4  of disability must occur before the ALJ must secure a medical advisor. Compare Armstrong v.
5  Commissioner of the Soc. Sec. Admin., 160 F.3d 587 (9th Cir. 1998) (holding ALJ should have used
6  medical advisor, where ALJ determined that disability existed after DLI, and dispute related only to
7  accuracy of onset date) with DeLorme v. Sullivan, 924 F.2d 841 (9th Cir. 1991) (pre-Morgan,
8  applying SSR 83-20 and holding ALJ should have used a medical expert, where ALJ had concluded
9  that claimant was not disabled at any point). These cases suggest that the rule requires consultation
10 with a medical advisor where the medical evidence regarding the claimant's mental health is
11 ambiguous and indefinite, regardless of whether the ALJ determined a date of onset.

12 Here, the record contains numerous treatment and consultation reports from the alleged onset
13 date in February 2002 to 2005 and beyond. Unlike the evidence in DeLorme, where the "brief notes"
14 made by the doctors treating the claimant's back problems did not reveal "how extensive or how
15 continuous his mental symptoms were," 924 F.2d at 848, the thorough evidence in this case is neither
16 ambiguous nor indefinite regarding Plaintiff's mental state. The court therefore does not find remand
17 for consultation with a medical advisor necessary and denies Plaintiff's request for such relief.

18 **III.  CONCLUSION**

19 Based on the foregoing, the court concludes that the Commissioner's decision has substantial
20 evidentiary support and is free from legal error. See Magallanes, 881 F.2d at 750. Accordingly, the
21 court hereby **AFFIRMS** the Commissioner's decision, **DENIES** Plaintiff's motion for summary
22 judgment, and **GRANTS** Defendant's cross-motion for summary judgment.

23 **IT IS SO ORDERED.**

24 DATED: November 28, 2007

25
                                                            _____
26                                                          Hon. Jeffrey T. Miller
                                                            United States District Judge

27 cc:      All parties

28